# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CLERGY FINANCIAL, LLC,

               Plaintiff,

v.

               **MEMORANDUM OF LAW AND ORDER**
               Civil File No. 08-5838 (MJD/JJG)

CLERGY FINANCIAL SERVICES,
INC.,

               Defendant.

Josh Jacobson, Law Offices of Josh Jacobson, P.A., Counsel for Plaintiff.

Sheila M. Heidmiller, Macheledt Bales Heidmiller LLP, admitted *pro hac vice,* and
David A. Davenport, Winthrop & Weinstine, PA, Counsel for Defendant.

## I.  INTRODUCTION

This matter comes before the Court on Defendant Clergy Financial

Services, Inc.'s Motion to Dismiss or, Alternatively, Transfer Venue [Docket No.

9].  The Court heard oral argument on January 30, 2009.

## II.  BACKGROUND

### a.  The Parties

Plaintiff Clergy Financial, LLC is a Minnesota limited liability company

with its principal place of business in Champlin, Minnesota.  Clergy Financial,

LLC is wholly owned by Mark Friesen, a citizen of Minnesota.  (Compl. ¶ 2.)

Defendant Clergy Financial Services, Inc. is a Colorado corporation with its

principal place of business in Loveland, Colorado.  (Id. ¶ 3.)  Both parties provide

similar accounting and financial services to clergy and churches nationwide.

### b.  Factual Background

Plaintiff initiated this lawsuit on October 27, 2008.  The essence of the

lawsuit is that both parties lay claim to the "Clergy Financial" trademark.

Defendant owns federal trademark registrations for various iterations of "Clergy

Financial."  Plaintiff, on the other hand, does not own any federal Clergy

Financial trademarks.  Instead, Plaintiff alleges in the Complaint that it is the

senior user of the Clergy Financial mark in interstate commerce.  (Compl. ¶ 1.)

The Complaint lists twelve counts against Defendant, including various

violations of federal law, common law trademark infringement, violations of

Minnesota law, common law unfair competition, and tortious interference.  In

addition to an order canceling Defendant's federal trademark registrations,

Plaintiff seeks damages as well as a permanent injunction enjoining Defendant

from using the Clergy Financial mark and operating any website that uses the

Clergy Financial mark, and further requiring Defendant to engage in corrective

advertising.

Determining the date that the Clergy Financial mark was first used in interstate commerce will be critical to resolving this case.  In the Complaint, Plaintiff states its belief that it can establish a first use date of sometime in 1986.  (Compl. ¶¶ 16, 22-23.)  Plaintiff further states in a later submission to the Court— apparently after having uncovered additional evidence—that it has used the Clergy Financial mark in interstate commerce since at least February 3, 1981.  (Pl.'s Mem. in Opp. at 4.)  To support this statement, Plaintiff provides the Court with a letter dated February 3, 1981.  (Friesen Aff. Ex. A.)  The letter, written on stationary for the South Dakota District Council of the Assemblies of God, Inc., refers to "Mr. Jake Friesen who is a representative for Clergy Financial Management."  (Id.)  Jake Friesen is Mark Friesen's father.

Defendant secured its federal trademark registrations on June 10, 2008.  A week later, Defendant sent its first cease and desist letter to Plaintiff, setting in motion the events leading to this lawsuit.  In its May 2007 applications to register the Clergy Financial mark with the United States Patent and Trademark Office ("PTO"), Defendant identified its first use date as "[a]t least as early as 10/01/2000."  (Compl. ¶ 30.)  In mid-September 2008, Defendant amended its federal trademark applications to include a first use date of "00/00/1980."  (Id. ¶ 42.)  Though Defendant maintains that such evidence is not required to prove

its claimed first use date of 1980, Defendant has provided the Court with

evidence in the form of multiple bills, dated in 1982, for tax preparation services

performed by Clergy Financial Planning Service.  (Answer and Counterclaim Ex.

P.)

### c.  The Dispute

The present dispute centers on Defendant's contention that Plaintiff filed

this suit in bad faith as a preemptive move to deprive the defendant of its

"rightful position as the 'true' Plaintiff in the proper forum of Colorado District

Court."  (Def.'s Mem. in Supp. at 1.)  To support this argument, Defendant

recounts for the Court a series of letters sent back and forth between opposing

counsel that began in June 2008.

In a cease and desist letter, dated June 17, 2008, Defendant notified

Plaintiff of its belief that Plaintiff's use of "Clergy Financial" violated

Defendant's trademarks.  At the end of the letter, Defendant's counsel writes that

Plaintiff's counsel "must contact me . . . **no later than June 27, 2008**" or else "we

will advise our client to pursue the full legal remedies available to rectify this

situation."  (Jacobson Aff. Ex. B at 5.)  Plaintiff's counsel characterizes his

response to Defendant's June 17 letter as a litigation threat of his own.  (See

Jacobson Aff. Ex. C at 1.)  In that letter, Plantiff's counsel notifies Defendant's

counsel of his belief that Plaintiff is the senior user of the Clergy Financial mark

because

> [w]hile your client's various filings with the USPTO allege a first use
> date of October 1, 2000, [my client's] use of the Disputed Marks can
> be traced to <u>at least</u> January, 1988, when Mark Friesen's father filed a
> corporate name change document with the Minnesota Secretary of
> State changing the name of the family company to Clergy Financial
> Management, Inc.

(<u>Id.</u>)  Four weeks later, on July 21, Defendant responded to Plaintiff's June 23

letter, expressing "a willingness to engage in a dialogue for purposes of entering

into an agreement setting forth the respective rights of the parties."  (Jacobson

Aff. Ex. D at 1.)  Plaintiff responded to that letter with a July 31 letter in which

Plaintiff's counsel writes

> I am far from certain that we will be able to resolve this dispute
> through any means other than litigation.  Moreover, given . . . your
> client's claimed first use date of October 1, 2000, I am surprised that
> you questioned [my client's] senior use of the Clergy Financial mark
> in interstate commerce.  Nevertheless, a cursory search of [my
> client's] files . . . uncovered documents from the mid-1980's
> evidencing [my client's] use of the mark in interstate commerce.

The parties did not exchange any more letters until October.  In the meantime,

Defendant amended the first use date of its trademark application to "0/0/1980."

On October 16, 2008, Defendant sent Plaintiff a letter notifying Plaintiff that

the first use dates had been "corrected/amended to reflect the actual first use

dates of 1980." (Jacobson Aff. Ex. E at 1.)  In that letter, Defendant's counsel

writes that her "client is fully prepared and poised to litigate this matter." (Id.)

After proposing, "in the interest of avoiding litigation," a solution in which

Defendant "would be willing to grant [Plaintiff] permission to make certain

limited uses of marks consisting in whole or in part of 'clergy' and [']financial'

within the State of Minnesota," defense counsel writes that "[w]e must hear from

you **no later than October 26, 2008**" or else "we will instruct our client to move

forward with litigation of this matter." (Id.)  On October 20, Plaintiff responded

to Defendant's letter, asking for evidence to support Defendant's newly amended

first use date. (Jacobson Aff. Ex. F.)  In that letter, Plaintiff states that it could not

"evaluate its options" until Defendant provided it with documentary evidence to

support Defendant's first use claims. (Id.)  Defendant did not respond to

Plaintiff's October 20 letter before the October 26 deadline, and Plaintiff filed this

lawsuit on October 27.

On October 29, Defendant responded to Plaintiff's October 20 letter,

writing that

> any 'documentary evidence' to support a corrected first use date is
> part of the public record in the online U.S. Patent and Trademark
> Office.  Moreover, as you should also know, amendment under
> section 7 of the Trademark Act is supported by a 37 C.F.R. Section

2.20 declaration.  We look forward to hearing back from you **no later than November 5, 2008**.

(Jacobson Aff. Ex. G.)  37 C.F.R. § 2.20 states

> Instead of an oath, affidavit, verification, or sworn statement, the language of 28 U.S.C. 1746, or the following language, may be used:

> The undersigned being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements and the like may jeopardize the validity of the application or document or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true; and all statements made on information and belief are believed to be true.

After Plaintiff filed this lawsuit, the parties entered into a stipulation to extend by three weeks Defendant's time to file an Answer and Counterclaim. (Jacobson Aff. Ex. H.)  As of the date of oral argument, Defendant had not filed a lawsuit in the District of Colorado.

Based on Plaintiff's actions—which Defendant characterizes as anticipatory forum shopping meant to rob the "true" plaintiff of its right to be in the proper venue of Colorado—Defendant seeks an order dismissing Plaintiff's claims or, in the alternative, transferring venue to the District of Colorado.  For the following reasons, the Court denies Defendant's motion.

## III.  DISCUSSION

### a.  Motion to Dismiss for Improper Venue

Defendant argues for dismissal under 28 U.S.C. § 1406(a), which states that

"[t]he district court of a district in which is filed a case laying venue in the wrong

division or district shall dismiss, or if it be in the interest of justice, transfer such

case to any district or division in which it could have been brought."

To the extent that Defendant presents an argument to dismiss for improper

venue under § 1406(a), Defendant fails to show that the District of Minnesota is

an improper venue for this case—a prerequisite for dismissal under § 1406(a).

For purposes of venue, "a defendant that is a corporation is deemed to reside in

any judicial district in which it is subject to personal jurisdiction at the time the

action is commenced."  28 U.S.C. § 1391(c).  Defendant does not dispute that it is

subject to personal jurisdiction in the District of Minnesota.  Accordingly, the

Court finds that venue is proper in the District of Minnesota.

### b.  Transferring Venue to the District of Colorado under First-Filed Doctrine

Defendant primarily argues that the Court should apply a first-filed rule

analysis and transfer venue to the District of Colorado.  The United States Court

of Appeals for the Eighth Circuit has defined the first-filed rule as follows:

> The well-established rule is that in cases of concurrent jurisdiction,
> "the first court in which jurisdiction attaches has priority to consider
> the case."  This first-filed rule "is not intended to be rigid,
> mechanical, or inflexible," but is to be applied in a manner best

>serving the interests of justice.  The prevailing standard is that "in
>the absence of compelling circumstances," the first-filed rule should
>apply.

Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir.

1993).  The rule reflects a federal policy against duplication of litigation and in

favor of efficient use of judicial resources.  See id. at 1004.  In this case, the Court

does not find the sorts of compelling circumstances that would allow it to ignore

the first-filed rule and to instead transfer venue to the District of Colorado.

A number of facts undermine Defendant's first-filed rule argument, not the

least of which is the fact that Defendant has not filed suit in the District of

Colorado.  Indeed, as the Eighth Circuit wrote in Northwest Airlines, the first-

filed rule applies in "cases of concurrent jurisdiction."  Id. at 1005.  In addition,

the very name of the first-filed rule clearly implies that at least one other case is

involved.  Here, Plaintiff's case is the only case that has been filed.

Defendant cites to no authority where a court has used the first-filed rule to

transfer venue in a case where the parties had only one lawsuit pending in

federal court.  As exhibited in case after case, the first-filed rule is intended to

give priority to the choice of venue of the party that first establishes jurisdiction

in cases where parallel litigation has been instituted in separate courts.  See, e.g.,

Northwest Airlines, 989 F.2d 1002.  Here, there is no parallel litigation for this Court to consider.

Nevertheless, Defendant argues that this case exhibits the sorts of traits that allow courts to refuse to apply the first-filed rule and to instead transfer venue to the preferred venue of the second-filing party.  The Eighth Circuit has identified "red flags" that, where present, may indicate the "compelling circumstances" that would justify a court's refusal to apply the first-filed rule. See Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999); Northwest Airlines, 989 F.2d at 1007.  In Anheuser-Busch, the Eighth Circuit declined to overturn a district court's refusal to apply the first-filed rule in a case where (1) the first-filing party was on notice that the second-filing party was going to imminently file suit and (2) the first-filing party's suit was for a declaratory judgment.  See 167 F.3d at 419.  In the earlier Eighth Circuit case of Northwest Airlines, the court listed other factors that would justify a court's refusal to apply the first-filed rule: (1) the first-filing party acted in bad faith, (2) the first-filing party raced to the courthouse to preempt a suit by the second-filing party, and (3) the first-filing party does not allege that the second-filing party's actions have had an adverse effect on the first-filing party.  See 989 F.2d at 1007.

Defendant argues that compelling circumstances exist in this case.  For example, Defendant points to the fact that Plaintiff filed its lawsuit only a day after the October 26 deadline included in Defendant's October 16 letter as evidence that (1) Plaintiff was on notice that Defendant was going to file suit and (2) Plaintiff raced to the courthouse to preempt Defendant's forum choice.

Taken on its face, the fact that Plaintiff filed this suit only a day after the October 26 deadline would appear to support Defendant's argument that Plaintiff raced to the courthouse.  However, the evidence before the Court shows that Defendant had previously instituted a June 2008 deadline by which Plaintiff had to respond or else face the threat of litigation.  In addition, the fact that Defendant wrote Plaintiff a letter dated two days after Plaintiff had filed this suit—a letter that included yet another deadline to respond—leads the Court to conclude that Defendant's litigation threats were not as serious as it claims.  See id. at 1007 (finding that a previous letter between the parties "gave no indication that a lawsuit was imminent" and that the letter was not doing "anything more than blowing smoke about a potential lawsuit").  The fact that Defendant required an extension to file its Answer and Counterclaim further undermines Defendant's contention that it was prepared to file suit in its forum of choice.

Finally, although Plaintiff does seek a declaratory judgment, it also seeks

injunctive relief and damages.  Thus, without commenting on the merits of

Plaintiff's case, the face of Plaintiff's Complaint is enough to satisfy the Court

that Plaintiff is a "true" plaintiff in the sense that it affirmatively alleges that it is

the senior user of the disputed trademark.  As a result, Defendant fails to

persuade the Court when it argues that the nature of Plaintiff's claims is similar

to the plaintiff's claims in Anheuser-Busch, where the Eighth Circuit held that

the district court was justified in refusing to apply the first-filed rule in part

because the first-filing party sought a declaratory judgment only.  See Anheuser-

Busch, 167 F.3d at 419.

### c.  Transferring Venue under § 1404(a)

Defendant also urges the Court to exercise its discretion under 28 U.S.C.

§ 1404(a) and transfer venue to Colorado.  Section 1404(a) states that, "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have

been brought."  "In general, federal courts give considerable deference to a

plaintiff's choice of forum and thus the party seeking a transfer under section

1404(a) typically bears the burden of proving that a transfer is warranted."  Terra

Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).  Initially the

moving party must show that the transferee district is one where venue would be proper.  <u>See</u> 28 U.S.C. § 1391.

Even if the Court were to find that Defendant has adequately shown that venue would be proper in Colorado, it is clear that Defendant has not satisfied its burden of showing that the balance of section 1404(a) factors favors transferring the case.  When deciding this issue, the Court has previously considered (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice.  <u>See</u> <u>August Technology Corp. v. Camtek, Ltd.</u>, No. 05-1396, 2005 WL 3274667 (D. Minn. Dec. 2, 2005) (citing <u>Terra Int'l</u>, 119 F.3d at 691 (8th Cir. 1997)).

Each of Defendant's § 1404(a) arguments in favor of transferring venue to the District of Colorado applies with equal force to Plaintiff.  For example, Defendant argues that it would be more convenient for it to try its case in Colorado because all of its witnesses and evidence are located in Colorado.  As Plaintiff points out, however, it is more convenient for Plaintiff to try its case in Minnesota because all of its witnesses and evidence are located in Minnesota. Indeed, "Defendants' motion to transfer this case would merely shift the inconvenience to the Plaintiff."  <u>ComputerUser.com, Inc. v. Tech. Publ'ns, LLC</u>, No. Civ. 02-832, 2002 WL 1634119 at *8 (D. Minn. July 20, 2002).  Furthermore, the

13

Court takes note of the fact that, if Plaintiff's factual allegations against Defendant are true, its injuries were felt primarily in Minnesota.  Likewise, if Defendant's factual allegations against Plaintiff are true, its injuries were felt primarily in Colorado.  In other words, for purposes of determining venue, the facts giving rise to this cause of action occurred just as much in Minnesota as in Colorado.  Both states have an equal connection to the case.

Finally, in response to one of Defendant's arguments in favor of transferring venue to Colorado, this Court has previously written that "courts can just as easily apply the law of another state as easily as their own." <u>Erickson v. Hertz Corp.</u>, No. Civ. 05-1690, 2006 WL 1004385 at *4 (D. Minn. Apr. 17, 2006). Thus, Defendant's corresponding argument—that the interests of justice favor transferring the case to Colorado because this case involves issues of Colorado law—is unpersuasive.  Moreover, Plaintiff's claims involve issues of Minnesota law.  Here again, Defendant's arguments in favor of transfer apply with equal force to Plaintiff's argument in favor of keeping the case in the District of Minnesota.  For all of these reasons, the Court finds that Defendant has not carried its heavy burden of showing that the balance of § 1404(a) factors favors transferring this case.

Accordingly, based on the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant's Motion to Dismiss or, Alternatively,

Transfer Venue [Docket No. 9] is **DENIED**.


Date: February 17, 2009                                          s/ Michael J. Davis
                                                                Michael J. Davis
                                                                Chief Judge
                                                                United States District Court